Dianna N. DAVIS, Plaintiff,

v.

**Jo Anne B. BARNHART,
Commissioner of Social
Security, Defendant.**

No. CIV.A.04–G–1042–S.

United States District Court,
N.D. Alabama,
Southern Division.

July 25, 2005.

Richard L. Wyatt, Wyatt & Davidson PC, Homewood, AL, for Plaintiff.

Alice H. Martin, U.S. Attorney, Lane H. Woodke, U.S. Attorney's Office, Birmingham, AL, Arthurice T. Brundidge, Social Security Administration–Office of General Counsel, Atlanta, GA, for Defendant.

### MEMORANDUM OPINION

GUIN, District Judge.

The plaintiff, Dianna N. Davis, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits. Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner. Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g).

### STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial

evidence and whether proper legal standards were applied. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). To that end this court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth*, at 1239 (citations omitted). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Bloodsworth*, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish his entitlement for a period of disability, a claimant must be disabled. The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months ...." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i). For the purposes of establishing entitlement to disability benefits, "physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R. § 404.1520(a)-(f). The Commissioner must determine in sequence:

(1) whether the claimant is currently employed;

(2) whether she has a severe impairment;

(3) whether her impairment meets or equals one listed by the Secretary;

(4) whether the claimant can perform her past work; and

(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir.1993); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." *Pope*, at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir.1995).

In the instant case, the ALJ, Jerome L. Munford, determined the plaintiff met the first two tests, but concluded she did not suffer from a listed impairment. The ALJ found the plaintiff unable to perform her past relevant work. Once it is determined that the plaintiff cannot return to his prior work, "the burden shifts to the [Commissioner] to show other work the claimant can do." *Foote*, at 1559. Furthermore, when a claimant is not able to perform the full range of work at a particular exertional level, the Commissioner may not exclusively rely on the Medical–Vocational Guidelines (the grids). *Foote*, at 1558–59. The presence of a non-exertional impairment, pain, also prevents exclusive reliance on the grids. *Foote*, at 1559. In such cases "the [Commissioner] must seek expert vocational testimony." *Foote*, at 1559.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

█ It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required. The VE is typically asked whether the claimant can perform his past relevant work or other jobs that

exist in significant numbers within the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments. "In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel,* 190 F.3d 1224, 1229 (11th Cir.1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work. In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed. This is so even if no other hypothetical question is posed to the VE. *See Gamer v. Secretary of Health and Human Services,* 815 F.2d 1275, 1280 (9th Cir.1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).

## DISCUSSION

In the present case the ALJ found the plaintiff suffered from fibromyalgia, status post anterior cervical fusion, status post bilateral carpal tunnel release, and major depression, single episode. The plaintiff was seen by Dr. Morgan, a Social Security Administration consulting examiner on September 10, 1999, for a physical examination. Dr. Morgan noted that the plaintiff "is somewhat tearful at times with depressed mood and flattened affect." [R 232] Dr. Morgan concluded: "It is my opinion that prolonged use of patient's upper extremities would be difficult in her current state of health. Depression is likely currently undermanaged and may be

making many of her symptoms worse." [R 233]

The plaintiff was seen by a Social Security Administration consulting mental examiner, Dr. Bentley, on September 20, 1999. Dr. Bentley noted that the plaintiff "cried profusely when discussing her loss of lifestyle and the chronic pain in her joints." [R 236] Dr. Bentley found that her "mood was severely depressed." He noted the plaintiff "admits some thoughts of wanting to die but has no active plans to injure herself." Dr. Bentley found "no obvious evidence of Ms. Davis exaggerating her symptoms for secondary gain." [R 235] Dr. Bentley diagnosed Major Depression, Single Episode, Moderate to Severe. [R 236] He found her impaired as follows: "Her impairment level for complex or repetitive tasks would appear to fall in the severe range. The client's impairment level for simple tasks would fall in the mild to moderate range." [R 236] In his summary, Dr. Bentley concluded: "Her psychiatric difficulties are marked by a Major Depression, Single Episode, Moderate to Severe. The claimant's mood was *severely depressed.*" [R 237 (emphasis added).]

Although the plaintiff does not appear to have received treatment for her depression from a psychiatrist or psychologist, her treating physicians noted the presence of depression. The plaintiff's treating rheumatologist, Dr. Thomas, indicated in his diagnostic assessment dated October 20, 1998, that he believed there was a "depressive component" to her symptoms. [R 224] Dr. Thomas's diagnostic assessments for February 2, 1999 and June 8, 1999, also indicated there was a depressive component. Her treating family physician, Dr. Murphree, diagnosed depression on April, 13, 2000.

A diagnosis of severe depression is strongly indicative of an inability to work. For example, the *Diagnostic and Statisti-*

cal *Manual of Mental Disorders* describes the criteria for assigning the specifier "Severe Without Psychotic Features" to a major depressive episode: "Episodes that are *Severe Without Psychotic Features* are characterized by the presence of most of the criteria symptoms and *clear-cut, observable disability (e.g., inability to work or care for children)*." 412 (4th Edition, Tex Revision) ("DSM–IV–TR") (italics in original)(emphasis added). The diagnostic criteria for assigning the "Moderate" specifier to depression is that the episode have a severity that is "intermediate between mild and severe." DSM–IV–TR at 412. Mild episodes are "characterized by the presence of only five or six depressive symptoms and either mild disability or the capacity to function normally but with substantial and unusual effort." DSM–IV–TR at 412. Therefore, moderate depression would fall between severe disability characterized by "clear-cut, observable disability (e.g., inability to work or care for children)" and mild disability in which the patient has the "capacity to function normally but with substantial and unusual effort." DSM–IV–TR at 412.

The ALJ asked the vocational expert (VE)whether a "moderately severe to severe level" of depression would preclude work. The VE responded that it would. [R 378] In his finding as to the plaintiff's residual functional capacity (RFC), the ALJ found the plaintiff's depression would cause "no greater than mild to moderate functional restrictions upon her ability to engage in basic work activities." [R 26] The hypothetical question presented to the VE upon which the ALJ relied to support his finding that the plaintiff could perform other work, included that the plaintiff would be "restricted to simple, *repetitive, non-complex task[s]*." [R 374 (emphasis

added).] Therefore, the ALJ rejected Dr. Bentley's assessments that the plaintiff suffered from moderate to severe depression and would be severely restricted for repetitive tasks. The ALJ appears to have adopted those portions of Dr. Bentley's report that supported an ability to work ( e.g., moderate impairment in ability to do simple tasks) but rejected those portions that supported disability (e.g., severely impaired for repetitive tasks, diagnosis of moderate to severe depression, mood severely depressed). The ALJ did not articulate his reasons for adopting some but not all of Dr. Bentley's opinions. Though not a treating source, Dr. Bentley is a specialist, and his diagnosis of moderate to severe depression is entitled to more weight.[1]

■ The present case bears a resemblance to the situation in *Wilder v. Chater*, 64 F.3d 335 (7th Cir.1995). In that case the court was faced with an ALJ who had improperly ignored the opinions of a consulting psychiatrist who was appointed by the Commissioner. The *Wilder* court observed:

> We are led to consider with a degree of suspicion the administrative law judge's decision to go against the *only medical evidence in the case, that of a psychiatrist not retained by the applicant but appointed by the administrative law judge himself* to advise on Wilder's condition.... The psychiatrist's testimony, though conclusional (but then no one pressed him to elaborate the grounds for his conclusions), was the only direct testimony concerning the critical issue of the date of onset of Wilder's disabling depression. Severe depression is not the blues. It is a mental illness; and *health professionals, in particular psy-*

---

1. "We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a medical specialist." 20 C.F.R. § 404.1527(d)(5)

*chiatrists, not lawyers or judges, are the experts on it.* The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and *the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight.* We do not say conclusive weight; but the facts on which the administrative law judge relied to contradict that evidence are singly and together unimpressive.

*Id.* at 337 (emphasis added) (citations omitted). In the present case, the ALJ did not give specific reasons for rejecting the opinion of Dr. Bentley that the plaintiff suffered from moderate to severe depression or to support his conclusion that the plaintiff's depression would cause no more than "mild to moderate functional restrictions." He likewise did not explain why he did not credit Dr. Bentley's opinion that the plaintiff's ability to perform repetitive tasks would be severely restricted.

An ALJ is not free to base his decision on unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in *Marbury v. Sullivan,* as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." *Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir.1988).... An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his *private or personal capacity;* however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840–41 (11th Cir.1992)(emphasis in original). In order to find the plaintiff not disabled in the present case, the ALJ rejected the opinion of the only psychological specialist who examined the plaintiff. His finding that the plaintiff's depression would cause no more than "mild to moderate functional restrictions" is contrary to the opinion of that specialist, and is not supported by substantial evidence. This is not the first time ALJ Munford has improperly made findings as to the severity of a plaintiff's mental impairment without medical support. This court, has previously commented on ALJ Munford's improper substitution of his medical opinions for those of trained medical professional:

> This is not the first time ALJ Munford has improperly made findings as to the severity of a plaintiff's mental impairment without medical support. In *Batts ex rel. Batts v. Barnhart,* another judge of this court admonished ALJ Munford for improperly substituting his opinions as to the severity of a mental impairment without medical support and noted that it was not the first time. 198 F.Supp.2d 1286, 1287 (N.D.Ala.2002).

*Haag v. Barnhart,* 333 F.Supp.2d 1210, 1221 (N.D.Ala.,2004).

■ The vocational expert testimony upon which the ALJ relied to find the plaintiff not disabled was based upon an RFC finding that was not supported by substantial evidence. Therefore, the Commissioner failed to carry her burden at step five of showing the plaintiff could perform other work. Accordingly, the plaintiff is disabled within the meaning of the Social Security Act.

### FINAL ORDER

In conformity with and pursuant to the memorandum opinion entered contemporaneously herewith, it is

ORDERED, ADJUDGED and DE-CREED that the decision of the Commissioner of the Social Security Administration is hereby REVERSED, and the case is REMANDED to the Commissioner with instructions that the plaintiff be awarded the benefits claimed. It is

FURTHER ORDERED that the Commissioner withhold from payments that are determined to be due the plaintiff under this order an amount not to exceed 25 percent of the total amount of disability benefits to which the plaintiff is entitled, pursuant to the provisions of 42 U.S.C. § 406(b). The Commissioner is directed to advise the court of the amount withheld so that the matter may be set for final determination of the amount of attorney's fee to be allowed plaintiff's counsel for services rendered in representing plaintiff in this cause.

It is further ORDERED pursuant to Rule 54(d)(2)(B) of the Federal Rules of Civil Procedure, that plaintiff's attorney is hereby granted an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b) until thirty (30) days subsequent to the receipt of a notice of award of benefits from the Social Security Administration. *This order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.*