**Vivian CRAIG, Plaintiff,**

v.

**Kenneth S. APFEL, Commissioner of Social Security, Defendant.**

**No. 97 C 5238.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 29, 1998.

---

Janet F. Gerske, Chicago, IL, for Plaintiff.

Eileen M. Marutzky, Kurt N. Lindland, Cathleen Rene Martwick, U.S. Attorney's Office, Chicago, IL, for Defendant.

### OPINION AND ORDER

NORGLE, District Judge.

Before the court are cross-motions for summary judgment. For the following reasons, the court denies Defendant's Motion for Summary Judgment, and grants Plaintiff's Motion for Summary Judgment. The matter is remanded for further proceedings consistent with this Opinion and Order.

## I. BACKGROUND

Plaintiff Vivian Craig ("Craig") first applied for supplemental security income ("SSI") on July 23, 1992, claiming that she was disabled due to asthma. On November 12, 1992, her request was denied. Craig reapplied for SSI on July 29, 1993, this time citing asthma and migraine headaches. Her second application was initially denied November 24, 1993, and later on reconsideration March 3, 1994. Craig then requested an administrative hearing.

On June 26, 1995, less than three weeks before the scheduled hearing, Craig, at the behest of her attorney, underwent a psychological examination. Dr. Paula R. Markowitz, a psychologist, performed the evaluation. The following summarizes Dr. Markowitz's findings and conclusions.

Craig presented herself as an obese 40 year-old African American. She appeared highly depressed and lethargic. Throughout the interview, she was tearful, and at times, sobbed uncontrollably. She put forth minimal effort to complete the assigned tests, and often, became frustrated and gave up. Her responses to simple questions were vague, disorganized, and required considerable thought before answering.

The Wide Range Achievement Test showed an IQ level between 70–72, which borders on mental retardation. Neuropsychological test results indicated organic dysfunction due to Craig's performance on memory detail tasks. She could not accurately reproduce designs, nor draw a clock, i.e., the numbers were placed counterclockwise. When evaluating Craig's personality traits, Dr. Markowitz noted that her life had been characterized by significant instability and trauma: loss of an alcoholic and abusive father, gang raped at the age of 13, periodic use of alcohol and drugs, and bearing five children by five different fathers. On the Beck Depression Inventory, Craig endorsed statements regarding sadness, hopelessness, failure, boredom, fatigue, and indecision.

Ultimately, Dr. Markowitz found that Craig suffered from major depressive disorder, functional illiteracy, dependent personality traits, and dementia. These impairments led Dr. Markowitz to conclude that Craig

met the listing requirements of 20 C.F.R. Part 404, Subpart P, App. 1, § 12.02 (organic mental disorders), § 12.04 (depressive syndrome), and § 12.07 (somatoform disorders).

On July 12, 1995, a hearing was held before Administrative Law Judge ("ALJ") Eileen Burlison. Craig, represented by counsel, was the first to testify. She stated that she had a tenth grade education, and briefly attended cosmetology school in 1990. After working only four months in a beauty salon, Craig quit her job due to a variety of claimed illnesses. Craig further testified that she visits her doctor's office regularly for asthma treatment. She also stated that she injects herself with medication when her migraine headaches become unbearable. As a result of these ailments, Craig spends her days sitting at home watching television. She has never had any significant employment except for her short stint with the beauty salon. Craig is supported by public aid.

Dr. Irving H. Zitman, a board-certified internist and neutral medical expert, was the next to testify. Although Dr. Zitman admitted that he never personally examined Craig, his testimony was based on a review of her medical records. Dr. Zitman opined that while there was insufficient evidence in the record to support Craig's claim of migraine headaches, Craig did have an asthmatic condition since the age of 26. The attacks occur once or twice a week, and last two to three hours. However, Dr. Zitman stated that Craig's pulmonary function tests did not meet any listing level and that she responded well to bronchodilators. Nevertheless, Dr. Zitman opined that Craig had some limitations in her functional abilities due to asthma and severe obesity. Dr. Zitman did not comment on Dr. Markowitz's psychological findings.

The vocational expert, Michael Komie, testified that even in light of Craig's limitations, she could still perform light jobs such as housekeeping. Additionally, many sedentary jobs involving assembly work were available to Craig. Komie did not express any opinion about how Craig's psychological profile may effect her employment opportunities.

Although Dr. Armin Meller, Craig's treating physician, and Dr. Fauzia Rana, an internist, the Social Security Administration hired to examine Craig, did not testify at the hearing, both submitted medical reports which were entered into evidence. In large part, the two doctors reached similar findings; both concluded that Craig suffered from asthma and sever obesity. Notably, neither doctor identified any psychiatric abnormalities.

On February 15, 1996, the ALJ issued her decision. The ALJ found that Craig was obese and suffered from asthma. However, the ALJ concluded that these impairments did not singularly or collectively meet the requisite listing level for SSI. Furthermore, the ALJ gave little weight to Dr. Markowitz's findings. She determined that the veracity of Dr. Markowitz's report was undermined by (1) the absence of any psychiatric diagnosis from other examining physicians, (2) the internal inconsistencies within the report, and (3) the eleventh hour timing of the exam. In the end, the ALJ accepted the vocational expert's testimony that Craig could perform light work which required minimal academic skills. Accordingly, the ALJ denied Craig's request for SSI.

Craig appeals, contending that the ALJ erred when she rejected Dr. Markowitz's psychological findings based on her own interpretation of that evidence.

## II. DISCUSSION

■ The court must uphold the ALJ's decision on review so long as the ALJ's findings of fact are supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997). Substantial evidence exists when a reasonable mind might accept it as adequate to support a conclusion. *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir.1997). However, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... and to enable us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir.1993) (*quoting Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir.1985)). In the course of articulating her reasoning, the ALJ is not permitted to make independent medical findings. *Herron v. Shalala*, 19 F.3d 329, 334 n. 10

(7th Cir.1994). Indeed, the Seventh Circuit "has counseled on many occasions [that] ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir.1996).

■ By discounting Dr. Markowitz's report in the absence of any contrary medical evidence, Craig claims that the ALJ made her own independent medical findings and improperly substituted her judgment for that of Dr. Markowitz. In support, Craig directs the court to a passage in the ALJ's decision where the ALJ found it significant that no other physicians identified Craig's severe depression. In relevant part, the ALJ wrote:

> Dr. Markowitz's report stands in stark contrast to this consistent absence of any evidence of a mental disorder. As Dr. Markowitz depicts the claimant, she is highly depressed, lethargic, strikingly detached and withdrawn, and vague and disoriented. It is impossible to accept that the claimant could have exhibited these symptoms without Dr. Meller noticing them. Dealing with depression is a common part of any general medical practice, the undersigned cannot accept that Dr. Meller would not have taken steps to help the claimant ... if she were in the state reported. Inasmuch as there is no evidence that Dr. Meller has done this, the undersigned discounts the larger part of Dr. Markowitz's report.

(R. at 25–26.) Craig argues that the ALJ's foregoing rational violates the holdings of two recent Seventh Circuit cases, *Wilder v. Chater*, 64 F.3d 335 (7th Cir.1995) and *Rohan v. Chater*, 98 F.3d 966 (7th Cir.1996).

In *Wilder*, 64 F.3d at 336, the plaintiff was working as a security guard in 1986 when she won two million dollars in the lottery. Less than a month later, she quit her job. *Id.* The plaintiff remained unemployed for the following four years. *Id.* Then, in 1990 she applied for SSI. *Id.* However, to be eligible, the plaintiff had to establish that the onset time of her disabling impairment, severe depression, occurred prior to December 31, 1986. *Id.* To that end, the ALJ appointed a psychi-

atrist to evaluate the plaintiff. *Id.* The medical expert testified that the plaintiff was disabled before the conclusion of 1986.

Although no other expert medical testimony was presented, the ALJ disregarded it. *Id.* In part, the ALJ denied benefits based on the fact that plaintiff's other medical records did not mention any mental illness. *Id.* Chief Judge Posner characterized the ALJ's deductive reasoning as "unimpressive" and "deficient." *Id.* at 337. He stated that "there is no reason to expect a doctor asked about an eye problem, or back pain, or an infection of the urinary tract to diagnose depression. He is not looking for it, and may not even be competent to diagnose it." *Id.* Recent medical research supports Chief Judge Posner's reasoning. *See, e.g.,* Herbert C. Schulberg, et al., *Major Depression in Primary Care Practice: Clinical Characteristics and Treatment Implications,* 36 Psychosomatics 129 (1995) (addressing the prevalence of primary care physicians' failure to recognize and diagnose depression). Thus, by ignoring the only expert testimony of depression onset, the court concluded that "the weight that the [ALJ] attached to what the medical records did not show ... does not evince a great deal of common sense ...." *Id.* at 338.

Here, as in *Wilder*, the ALJ's emphasis on the absence of mental illness from the medical records is misplaced. Craig's prior examinations focused on her physical morbidity, such as, asthma, obesity, headaches, and a variety of joint ailments. There is no indication that the doctors were looking for a mental illness. Furthermore, Craig herself never alerted her physicians that she may be suffering from depression.[1] Thus, the ALJ should not have drawn a negative inference from the absence of a mental illness diagnosis in Craig's medical records.

In *Rohan*, 98 F.3d at 967, the plaintiff, a carpenter, originally applied for SSI due to a bad back. After the request was denied, the plaintiff reapplied two years later, again claiming a back condition, but also depression. *Id.* Dr. Michael Shapiro, a psychiatrist,

---

1. The ALJ noted that Craig's own failure to raise the possibility of depression is further proof of its nonexistence. However, given the difficulty primary care physicians have in diagnosing depres- sion, Schulberg, et al., *supra*, at 129, and Craig's own physical and mental conditions, it is understandable that Craig would not recognize her own depression.

found that "plaintiff's condition was debilitating and limiting and that his inability to function, chronic pain and lack of alternative life style contributed to his depressed state." *Id.* at 968. However, the ALJ was unconvinced and denied benefits. *Id.*

The ALJ found that plaintiff's depression was primarily caused by "family and financial concerns." *Id.* at 969. From this "situational aspect of claimant's depression," the ALJ concluded that the depression was not "of such severity that it would prevent the performance of the mental features of unskilled work." *Id.* Additionally, the ALJ noted that the plaintiff's ability to periodically repair lawnmowers was inconsistent with Dr. Shapiro's diagnosis of disabling depression. *Id.* Finally, the ALJ attacked Dr. Shapiro's testing methods, observing that his conclusions were "based only upon subjectively reported symptoms." *Id.*

The Seventh Circuit held that the ALJ's rational constituted reversible error:

> [I]t is quite evident from our review of the record and the ALJ's decision that he independently evaluated the evidence in this case and improperly substituted his judgment for that of Dr. Shapiro. Without expressly relying on any medical evidence or authority, the ALJ determined that [plaintiff's] efforts at engaging in small machine repair/resale business were incompatible with a diagnosis of major depression and Dr. Shapiro's conclusions regarding [plaintiff's] functional abilities. . . . As far as discernable from this record, the ALJ simply indulged his own lay view of depression for that of Dr. Shapiro.

*Id.* at 971.

Here, the ALJ impermissibly conducted her own independent evaluation of the mental illness evidence. Specifically, the ALJ erred when, in the absence of any contrary expert evidence on depression, she accorded "little weight" to Dr. Markowitz's findings. As Chief Judge Posner so aptly explained:

> Severe depression is not the blues. *It is a mental illness; and health professionals, in particular psychiatrists, not lawyers or judges, are the experts on it.* The question what stage a physical or mental illness had probably reached some years before it was first diagnosed is a medical question, and

the uncontradicted evidence of the only disinterested expert to opine upon it is entitled to considerable weight.

*Id.* at 970–71 (*quoting Wilder,* 64 F.3d at 337) (emphasis added).

Although Dr. Markowitz did not perform her examination at the request of the ALJ, like the expert in *Wilder,* there is no contrary expert evidence to suggest that the results were inaccurate or unreliable. Furthermore, the ALJ did not discount its accuracy because of bias. The ALJ did imply, however, that the examination may be tainted because it came on the eve of the hearing. This observation deserves little consideration. As discussed above, the failure to identify Craig's depression is more likely attributable to the complexity in diagnosing the illness, rather than some effort among Dr. Markowitz, Craig, and her attorney to concoct an eleventh hour basis for SSI benefits. *Wilder,* 64 F.3d at 337; *Rohan,* 98 F.3d at 969, 971 (finding no significance in the ALJ's statement that plaintiff's complaints about pain were questionable because he did not take any pain relief medication until the eve of the hearing).

Finally, the ALJ questioned the accuracy of Dr. Markowitz's test results because they were based on Craig's subjective complaints and her inability to put forth more than a "minimal effort" in completing some of the tests. (R. at 21.) However, the ALJ's attack on Dr. Markowitz's testing methodologies is another forbidden foray into an expert's field of specialty. *Rohan,* 98 F.3d at 969. It is simply a variation on independently evaluating evidence and substituting lay judgment for that of an expert. *Scivally v. Sullivan,* 966 F.2d 1070, 1076 (7th Cir.1992). Notwithstanding, the record reveals that not all the tests Dr. Markowitz performed required Craig's subjective beliefs. Additionally, the fact that Craig became frustrated and unable to complete tests may itself be a manifestation of her depression; but that, along with further evidence of mental illness, needs to be developed on remand.

Accordingly, the matter is remanded to the ALJ for further proceedings on the issue of Craig's mental illness. The court does not express any opinion on Craig's ultimate eligi-

bility for benefits, only that the ALJ's grounds for denial were unreasonable.[2]

### IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is denied and Plaintiff's Motion for Summary Judgment is granted.  The matter is remanded for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

2. Because the court remands on this basis, it will not address the other grounds Craig raised on appeal.