[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14888
Non-Argument Calendar
_____

D.C. Docket No. 4:16-cv-01329-KOB


SHARIESE JACKSON,

                                        Plaintiff - Appellant,

                        versus

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

                                        Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(July 29, 2019)

Before MARTIN, JILL PRYOR, and BRANCH, Circuit Judges.

PER CURIAM:

Shariese Jackson appeals the district court's order affirming the administrative law judge's ("ALJ") decision to deny her application for supplemental security income ("SSI") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), based on the ALJ's conclusion that she was not "disabled" under the Social Security Act.  Jackson argues that, after the Appeals Council vacated the ALJ's initial denial of benefits, the ALJ could not change the finding that her consulting physician's opinion was entitled to great weight.  Jackson then argues that the ALJ erred in her analysis of her doctor's opinion and failed to adequately explain her reasoning in discounting it.  After careful review, we affirm the denial of benefits.

## I.    BACKGROUND

Jackson filed the instant application for SSI and, after its initial denial, sought a hearing before an ALJ.  Jackson submitted her medical records to the ALJ and, at the behest of the agency, attended a consultative examination with Dr. Sathyan Iyer.

In a narrative report, Dr. Iyer wrote that, in addition to migraine headaches and kidney disease, Jackson complained of pain in both legs and swelling in her ankles and feet.  Dr. Iyer noted that Jackson had full range of motion in all of her major joints, "without any restriction," but had crepitus under both of her kneecaps

2

when her knees were extended.  A.R. at 695.[1]  Her straight leg raise test was negative, she had normal muscle strength in her legs, and she had normal deep tendon reflexes and no motor or sensory deficits.  Dr. Iyer commented that "[i]n her current condition, she may have impairment of functions involving standing, squatting, climbing, working at heights, and working around machinery.  She does not have limitation of functions involving sitting, handling, hearing, or speaking." *Id.* at 696.

Dr. Iyer also submitted a "Medical Source Statement of Ability to Do Work-Related Activities," in which he estimated that Jackson could, without interruption: (1) sit for 1 hour at a time, up to 5 hours out of an 8-hour workday; (2) stand for 30 minutes at a time, up to 2 total hours per 8-hour workday; and (3) walk for 30 minutes at a time, up to 1 total hour per 8-hour workday.  Dr. Iyer also opined that Jackson could only occasionally reach with her hands or operate foot controls, and could only "frequently," meaning one-third to two-thirds of the workday, use her hands to handle, finger, feel, and push or pull objects.  *Id.* at 699.

The ALJ denied Jackson's application for SSI.  The ALJ concluded that Jackson suffered from the severe impairments of obesity, hypertension, chronic kidney disease, headaches, diabetes, depressive disorder, polycystic ovarian syndrome, and possible borderline intellectual functioning, but she did not meet or

---

[1] Citations to A.R. refer to the administrative record.

3

medically equal any listed impairment in 20 C.F.R. Part 404.  The ALJ then determined that Jackson had the residual functional capacity ("RFC") to perform sedentary work with certain physical and mental limitations.  In explaining the RFC finding, the ALJ discussed Dr. Iyer's examination and assigned great weight to his opinions, finding that they were generally consistent with his findings and the record evidence.  Nonetheless, the ALJ concluded that Dr. Iyer's opinion provided little support for Jackson's allegations of severe functional limitations.

Jackson sought review with the Appeals Council, which granted her request and vacated the ALJ's decision.  The Appeals Council found that, despite according "great weight" to Dr. Iyer's opinion, the ALJ failed to note that Dr. Iyer opined that Jackson was limited to frequent handling, fingering, feeling, pushing, and pulling, and occasional reaching and operation of foot controls.  *Id.* at 155. Because those limitations could "significantly erode the sedentary occupational base," the Appeals Council directed the ALJ to evaluate Jackson's RFC further. *Id.* at 155-56.

After conducting another hearing and receiving additional medical evidence, the ALJ issued a second decision denying Jackson's application for SSI.  The ALJ concluded again that Jackson had the RFC to perform sedentary work, noting that she had "no manipulative limitations and [could] use her bilateral upper extremities for constant reaching, handling, fingering, and feeling." *Id.* at 62.  The ALJ

4

discussed Jackson's medical evidence in detail to support that finding. As to Dr. Iyer's opinion in particular, the ALJ gave it limited weight because certain restrictions he described in the medical source statement conflicted with his own narrative report and with other medical evidence. The ALJ noted, for example, that Dr. Iyer stated in the narrative report that Jackson had no limitation of function involving sitting or handling, but opined in the source statement that she was limited in how long she could perform those activities. The ALJ added that Jackson's physical examination, which showed no abnormality aside from some tenderness and crepitus, conflicted with the degree of restrictions that Dr. Iyer suggested.

Jackson requested review by the Appeals Council but was denied. She then sought judicial review, but the district court affirmed the denial of benefits.

## II.    STANDARD OF REVIEW

In a social security case, when appropriate, we review the agency's legal conclusions *de novo* and its factual findings to determine whether they are supported by substantial evidence. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). Substantial evidence is defined as "relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). We do not reweigh the evidence or substitute our own judgment for that of the agency. *Miles v. Chater*,

5

84 F.3d 1397, 1400 (11th Cir. 1996).  "If the [agency]'s decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation marks omitted).

## III.    DISCUSSION

Jackson raises two arguments on appeal.  First, she asserts that, because the ALJ assigned great weight to Dr. Iyer's opinion in the first decision denying her application, *res judicata* barred the ALJ from assigning limited weight to the opinion in the second decision.  Second, she asserts that the ALJ failed to accord the proper weight to Dr. Iyer's opinion, substituted her own opinion for Dr. Iyer's, and failed to state with "some measure of clarity" her basis for discounting the opinion.  She also urges us to adopt the standard for evaluating consulting physicians' opinions set forth in the Seventh Circuit's decision in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995).

### A. *Res Judicata* Did Not Bar the ALJ From Assigning Little Weight to Dr. Iyer's Medical Opinion.

Administrative *res judicata* applies when the agency has "made a previous determination or decision . . . about [a claimant's] rights on the same facts and on the same issue or issues, and [that] previous determination or decision has become final by either administrative or judicial action."  20 C.F.R. § 404.957(c)(1).  A decision that has been vacated, however, has no preclusive effect.  *Cf. Quarles v.*

6

*Sager*, 687 F.2d 344, 346 (11th Cir. 1982) ("Claim preclusion does not apply in this case.  The judgment of the district court was vacated; thus, no final judgment on the merits exists.")

Jackson's argument is misplaced because there was no final decision binding the ALJ from discounting Dr. Iyer's opinion.  *See* 20 C.F.R. § 404.957(c)(1).  Rather, the Appeals Council vacated the initial decision, so it could have no preclusive effect.  *See Quarles*, 687 F.2d at 346.

### B. Jackson Has Failed to Establish That the ALJ Erred in Denying Her Application for Benefits.

In assessing the weight due to be afforded to medical opinions, the ALJ should consider the following factors: the examining and treatment relationship between the claimant and doctor, the length of the treatment and the frequency of examination, the nature and extent of the treatment relationship, the supportability and consistency of the evidence, the specialization of the doctor, and other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c).  The ALJ must state with particularity the weight given to medical opinions, and we will not affirm if the ALJ fails to provide "some measure of clarity" for her decision in this regard.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (internal quotation marks omitted).  The opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary.  *Id.*  The opinion of a physician who examined a claimant on only one

7

occasion, however, is not entitled to great weight.  *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004).  The ALJ nevertheless must discuss the examining physician's opinion and articulate grounds for rejecting it.  *See Winschel*, 631 F.3d at 1179 (reversing an ALJ's disability determination based in part on the failure to "discuss pertinent elements of the examining physician's medical opinion" or clearly articulate the reason for rejecting that opinion).

We note first that Jackson has provided no analysis to support her argument that the ALJ erred in assessing Dr. Iyer's opinion.  She provides several block quotes from non-binding caselaw and from the record, but her discussion of the ALJ's decision amounts to a bare assertion that the ALJ improperly rejected Dr. Iyer's opinion and substituted her own.  By failing to specify which aspect of the ALJ's decision was incorrect or unsupported by substantial evidence, Jackson has abandoned any challenge to the factual accuracy of the ALJ's conclusion.  *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014).

To the extent Jackson contends that the decision was erroneous because the ALJ applied the wrong legal standard in evaluating Dr. Iyer's opinion, the argument fails.  The ALJ was required to consider Dr. Iyer's opinion and articulate with some measure of clarity her reasons for discounting it, and she did so.  *See Winschel*, 631 F.3d at 1179.  She had no obligation, as Jackson appears to contend, to assign great weight to Dr. Iyer's opinion.  *See Crawford*, 363 F.3d at 1160.  The

8

ALJ discussed Jackson's medical history at length and concluded that Dr. Iyer's opinion was inconsistent with his own observations and with the record as a whole. We acknowledge that the ALJ may have overestimated the extent to which Dr. Iyer's general statement in his narrative report undermined his specific assessments of how long or frequently Jackson could perform certain activities. We cannot, however, reweigh the evidence or substitute our own judgment for the ALJ's. *See Miles*, 84 F.3d at 1400; *Phillips*, 357 F.3d at 1240 n.8. This is particularly true where, as here, the applicant has provided no substantive argument in that regard.

Finally, we decline Jackson's invitation to adopt the standard set forth by the Seventh Circuit in *Wilder*. Contrary to her assertion, we have articulated our own standard for reviewing the opinions of agency-appointed consulting physicians. *See Crawford*, 363 F.3d at 1160. Moreover, *Wilder* is inapposite because the facts of that case differ substantially from the present case. 64 F.3d at 338 (determining that, where the consulting physician's opinion was the *only* medical evidence regarding the applicant's mental health impairments, the ALJ's rejection of that opinion was based on "rank conjecture").

## IV.    CONCLUSION

Because Jackson has failed to establish that the ALJ erred in denying her application for benefits, the decision of the agency is affirmed.

**AFFIRMED.**