[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-10966

Non-Argument Calendar

_____

CHARLES WAYNE COLE,

Plaintiff-Appellant,

*versus*

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-01695-JHE

_____

Before WILSON, BRANCH, and LUCK, Circuit Judges.

PER CURIAM:

Charles Wayne Cole appeals the district court's order affirming the Social Security Commissioner's ("Commissioner") denial of supplemental security income ("SSI"). On appeal, Cole argues that we should reverse the denial of his claim for SSI because the Administrative Law Judge ("ALJ") erroneously found the medical opinions of two experts unpersuasive. After review, we affirm.

## I.    Background

### a. *Cole's medical history*

The following medical history was reviewed by the ALJ, who denied Cole's SSI claim, and by the magistrate judge, who affirmed the ALJ's decision.[1] In early 2019, Cole applied for SSI, asserting that his disability began on January 1, 2016. In his disability report, Cole stated that his ability to work was limited due to metal rods in his left leg, mental problems, and constant, severe pain. He explained that he was employed as a carpenter from 1991 to 2004 and stopped working on July 1, 2004, because of his medical conditions.

---

[1] Both parties consented to a magistrate judge conducting proceedings in the case below, including the entry of final judgment.

In December 2018, Cole was discharged from a mental health center with a diagnosis of alcohol-induced depression.  He visited the mental health center again several days later, reporting that he "self-medicated for pain with alcohol" and that "[h]e [was] interested in seeking help in managing pain."  A week later, he returned to the center and "reported that he [was] feeling well" except for slight tightness in his chest, which began after he started his medication.  He reported that he was getting along well with others and expressed no other concerns.

In April 2019, consulting psychologist Robert A. Storjohann, Ph.D., examined Cole.  In his report, Dr. Storjohann observed that Cole was appropriately dressed and groomed and was "[o]riented to person, place, situation, and time."  Dr. Storjohann's report also noted that Cole "appeared to be experiencing considerable pain and discomfort throughout the exam" and Cole's demeanor "was that of being quite dysphoric and ill-at-ease."  During the examination, Cole performed simple math calculations and various cognitive exercises related to concentration and attention without error.  For example, Cole successfully counted backwards from 20 to 1; spelled "world" forwards and backwards; subtracted serial sevens from 100; recalled two of three objects after a five-minute delay; recalled his son's birthday; described his activities from the previous day without difficulty; and identified the United States president, two states that bordered Alabama, the capital of Alabama, and the number of months in a year.  As to abstractions,

Cole identified similarities amongst objects (*e.g.*, that an orange and banana were both fruits) and the lessons of proverbs.

Dr. Storjohann found that Cole's thoughts and speech were logical, coherent, and goal-directed and without loose associations or confusion. As to Cole's thought content, Dr. Storjohann observed no hallucinations or delusions. Nonetheless, Dr. Storjohann opined that Cole had "significant mental health difficulties" and that Cole was "markedly impaired" in his ability to maintain effective social interactions in various settings and "moderately to markedly impaired" in his "ability to understand, carry out, and remember simple work-related instructions."

The next month, James P. Temple, M.D., examined Cole. Cole's chief complaint to Dr. Temple was "[r]ight lower extremity pain" and back pain from a motorcycle accident that occurred in 2011. Dr. Temple observed that Cole walked with a crutch, "had a marked limp," and was "unable to bend, squat, and stoop because of pain and decreased range of motion of his hips and back." In the opinion section of his report, Dr. Temple wrote: "At the present time, this patient is unemployable. He is in dire need of a family physician for investigative purposes."

One month later, Amy Cooper, Ph.D., performed Cole's mental residual functional capacity ("RFC") assessment. She found that Cole could "understand and remember simple instructions and work procedures," "carry out simple tasks," and "tolerate ordinary work pressures." She also found that he would benefit from being in an environment with familiar coworkers, a flexible

schedule, and regularly scheduled rest breaks "but [would] still be able to maintain a work pace consistent for the mental demands of competitive level work."  As part of her assessment, Dr. Cooper evaluated Dr. Storjohann's and Dr. Temple's medical opinions on Cole's mental health.  She concluded that Dr. Storjohann's opinion was "without substantial support" and only "somewhat consistent with [the] evidence in file" and that Dr. Temple's opinion was "without substantial support" and "not fully consistent with [the] evidence in file."

Anthony Pitts, M.D., performed Cole's physical RFC assessment.  After reviewing the record, Dr. Pitts found that Cole could perform a range of light work with postural, manipulative, and environmental limitations.

In the fall of 2019, Cole saw his family doctor, Robert W. Bartel, M.D., twice.  During both visits, Cole denied having depression or anxiety.  On examination during both visits, Dr. Bartel observed that Cole was alert, awake, and oriented; that his memory was intact; and that his judgment, mood, and affect were normal.  On the first visit, Dr. Bartel reported that Cole had normal motor tone and coordination, normal range of motion, no motor or sensory deficits, and an unsteady gait but that he should "have minimal difficulty . . . using a walking stick [for his] leg weakness." On the second visit, Dr. Bartel observed that Cole used a walking stick and had diminished range of motion.  As to Cole's neurological examination, Dr. Bartel noted "[n]o [c]hanges" since Cole's last visit.

In March 2020, Cole visited Dr. Bartel again. Dr. Bartel examined Cole and described Cole as having normal judgment, normal mood and affect, and an intact memory. Dr. Bartel also observed that Cole was "pleasant" and "cooperative" and noted no motor or sensory deficits.

In January 2020, Cole visited the emergency room for arm, back, and leg pain. Cole explained that he had missed an appointment with his primary care physician and had not taken his pain medicine for three weeks.

Less than a week later, Cole visited the emergency room again, this time for anxiety and shaking. He explained that his physician had given him medication but that he had been out of the medication for over six weeks.

b. *The ALJ hearing and decision*

In April 2020, after the Commissioner denied Cole's claim for SSI, an ALJ held a hearing on Cole's claim. At the hearing, Cole testified, consistent with his application for SSI benefits, that he had been a carpenter from 1991 to 2004 and that his disability "onset date" was January 1, 2016. He testified that he could stand or sit at a work chair for 5 to 10 minutes before his back started bothering him and that he could walk 15 to 20 feet before needing to sit down and rest. He also testified that he could lift five to ten pounds on a frequent basis but that Dr. Bartel had told him not to do any lifting. Cole reported that his pain was unbearable the majority of the time

and that his medications did not help with the pain, despite trying different medications prescribed by Dr. Bartel.

A vocational expert ("VE") also testified at the hearing. When asked to assume a hypothetical about an individual with the same age, education, prior work experience, and physical and mental limitations as Cole, the VE testified that the hypothetical individual could not return to his past work as a carpenter but could perform certain sedentary jobs—such as an unskilled, sedentary inspector, assembly worker, or hand packager.

After employing the Commissioner's five-step sequential evaluation for determining whether a claimant is disabled, the ALJ concluded that Cole was "not disabled" under the Social Security Act and denied Cole's claim for SSI.[2]

At step one, the ALJ found that Cole "ha[d] not engaged in substantial gainful activity at any time pertinent to this decision."

---

[2] The Social Security regulations outline a five-step process that the ALJ uses to determine whether a claimant is disabled. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he "has a severe impairment or combination of impairments"; (3) "whether th[at] impairment [or combination of impairments] meets or equals the severity of the specified impairments" in the regulations; (4) "whether the claimant can perform any of his . . . past relevant work" in light of his RFC; and (5) "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Id.*

At step two, the ALJ identified Cole's previously fractured left leg, depressive disorder, and anxiety disorder as severe impairments that significantly limited Cole's ability to perform basic work activities.

At step three, the ALJ found that despite Cole's severe impairments, Cole did not have an impairment or combination of impairments that met one of the impairments listed in applicable regulations.

At step four, after considering the record and medical evidence, the ALJ found that Cole had the RFC to perform

> sedentary work as defined in 20 CFR [§] 416.967(a) except he could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk three hours per eight-hour day; sit six hours per eight-hour day; frequently push and pull with the bilateral upper and lower extremities; occasionally climb ramps and stairs; never climb ladders, ropes, and scaffolds; frequently balance and stoop; occasionally kneel, crouch, and crawl; frequently reach overhead, handle, and finger bilaterally; must avoid concentrated exposure to extreme cold or heat, vibration including power tools and air compression tools; limit wet, slippery, icy surfaces and uneven terrain; avoid even moderate exposure to hazards including unprotected heights; can understand and remember simple instructions and work procedures;

should be able to concentrate and attend to simple tasks for two hours and will need all customary rests and breaks; could tolerate ordinary work pressures but should avoid excessive workloads, quick decision making, rapid changes, and multiple demands; is likely to do best working with a small number of familiar co-workers; and changes in the work environment or expectations should be occasional and presented gradually to give time for adjustment. Travel should be restricted to local and familiar environments.

Ultimately, the ALJ found that Cole was unable to perform his past, relevant work as a carpenter because its workplace demands exceeded his RFC.

The ALJ also found that Dr. Storjohann's examination reports contained "generally benign findings that [were] not supportive of the marked limitations noted in his opinion." After considering all the medical evidence in the record, the ALJ concluded that Dr. Storjohann's opinion was unpersuasive and "not consistent with the overall medical evidence which show[ed that Cole] had normal mood and affect during most of his mental status examinations."

Likewise, the ALJ did not find Dr. Temple's opinion persuasive because it "was not supported with specific examination findings, did not include any specific vocational limitations, and [was] conclusory." The ALJ also concluded that statements that a

claimant is "disabled" or "unable to work"—like Dr. Temple's opinion that Cole was "unemployable"—were not medical opinions. Rather, they were administrative findings reserved to the Commissioner.

Finally, at step five, the ALJ concluded that considering Cole's RFC, age, education, and work experience, there were significant numbers of jobs in the national economy that Cole could perform. Specifically, the ALJ found that Cole could perform sedentary, unskilled work as an inspector, an assembly line worker, or a hand packager.

Cole appealed the ALJ's decision to the Appeals Council, but his request for review was denied.

c. *The magistrate judge's order*

Cole then filed a complaint in district court, arguing that the ALJ's determination that Cole was not disabled was not based on substantial evidence and that the ALJ did not use the proper legal standards.

The magistrate judge affirmed the Commissioner's decision. He noted that "Cole raise[d] a single objection to the ALJ's decision: the ALJ inappropriately rejected the opinions of consultative psychological examiner Dr. Robert A. Storjohann and consultative medical examiner Dr. James Temple." The magistrate judge concluded that the ALJ did not err because substantial evidence supported the ALJ's finding that the doctors' opinions were unpersuasive.

Cole timely appealed to this Court.

## II.    Standards of Review

"When, as in this case, the ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "[W]e review *de novo* the legal principles upon which the Commissioner's decision is based," and "we review the resulting decision only to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

In the Social Security context, the threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is "more than a mere scintilla" and "means only . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotations omitted). "Substantial evidence is less than a preponderance, and thus we must affirm an ALJ's decision even in cases where a greater portion of the record seems to weigh against it." *Simon v. Comm'r, Soc. Sec. Admin.*, 7 F.4th 1094, 1103 (11th Cir. 2021) (quotation omitted). "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner]." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (alteration in original) (quotation omitted).

### III.    Discussion

On appeal, Cole argues that we should reverse the ALJ's denial of SSI because the ALJ erred in rejecting the opinions of Dr. Storjohann and Dr. Temple.[3]  We disagree and affirm because there was substantial evidence to support the ALJ's conclusion that Dr. Storjohann's and Dr. Temple's opinions were unpersuasive.

To qualify for SSI, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security regulations outline a five-step process that the ALJ must use to determine whether a claimant is disabled.[4]  *Winschel*, 631 F.3d at 1178.  The regulations

---

[3] To the extent Cole challenges any other aspects of the ALJ's decision, he has forfeited those arguments.  An appellant's brief must address his contentions and the reasons for them with citations to the authorities and parts of the record on which he relies.  Fed. R. App. P. 28(a)(8)(A).  An appellant forfeits an issue when he "raises it in a perfunctory manner without supporting arguments and authority."  *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  Cole's brief, which is replete with block quotes and cursory mentions of various court decisions, falls into this snare.  *See Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898–99 (11th Cir. 2022).

[4] As a reminder, the five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether he "has a severe impairment or combination of impairments"; (3) "whether th[at] impairment [or combination of impairments] meets or equals the severity of the specified impairments" in the regulations; (4) "whether the claimant can perform any

22-10966                Opinion of the Court                13

also explain what evidence is permitted for admission before an ALJ and how an ALJ should consider certain evidence.

As relevant to this case, the regulations provide that any statement about whether a claimant is disabled, able to work, or able to perform regular or continuing work is a statement on an issue reserved to the Commissioner and is considered "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c)(3)(i). With respect to medical opinions, for claims filed on or after March 27, 2017, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] medical sources."[5] *Id.* § 416.920c(a). Instead, the ALJ must "articulate in [his or her] determination or decision how persuasive [he or she] find[s] all of the medical opinions," taking into account five factors: (1) "supportability," (2) "consistency," (3) the "relationship with the claimant," (4) "specialization," and (5) "other factors that tend to support or contradict" the opinion. *Id.* § 416.920c(c). The regulations explain that supportability and

of his . . . past relevant work" in light of his RFC; and (5) "whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience." *Winschel*, 631 F.3d at 1178.

[5] The regulations relating to the evaluation of medical evidence were revised in 2017. Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (to be codified at 20 C.F.R. pts. 404 & 416) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017)). Because Cole filed his claim in 2019, these revised regulations apply to his claim.

consistency are the two most important factors. *Id.*
§ 416.920c(b)(2).

Cole argues that the ALJ erred by refusing to accept Dr. Storjohann's and Dr. Temple's opinions.[6] We disagree. Substantial evidence supports the finding that Dr. Storjohann's and Dr. Temple's opinions are unpersuasive.[7] First, the ALJ did not err

---

[6] Cole also asks this Court (1) to "issue a published decision in this case reversing the denial of benefits based on [*McClurkin v. Soc. Sec. Admin., Comm'r*, 625 F. App'x 960 (11th Cir. 2015)] and affirming the holding of [*McClurkin*] as precedent" and (2) to "embrace" *Wilder v. Chater*, 64 F.3d. 335, 337–38 (7th Cir. 1995).

As to *McClurkin*, first, Cole has not explained why *McClurkin*, an unpublished case, would compel reversal of the ALJ's decision in this case. Second, as a 2015 case, *McClurkin* applied the pre-2017 version of the regulations when assessing how an ALJ should evaluate medical opinions and its analysis is thus inapposite here. *See McClurkin*, 625 F. App'x at 962–63. And third, even if *McClurkin* were otherwise applicable, it is factually distinguishable because—unlike this case—the ALJ failed to explain his grounds for discounting a medical opinion. *See id.*

Similarly, *Wilder*—an out-of-circuit, 1995 decision that applies outdated Social Security regulations and is factually distinguishable—is inapplicable. *See* 64 F.3d at 337–38.

[7] Cole contends that the ALJ should have requested additional information if the ALJ was not satisfied with the reports of Dr. Storjohann and Dr. Temple. But the regulations do not require an ALJ to reach out to doctors for additional information in these circumstances, and it was not error for the ALJ not to do so. *See* 20 C.F.R. § 416.920b(b)(2) (explaining that it is the ALJ's prerogative to determine the "best way to resolve [an] inconsistency or insufficiency" in the evidence).

by finding that Dr. Storjohann's examination reports contained "generally benign findings that are not supportive of the marked limitations noted in his opinion." Dr. Storjohann's reports documented that Cole was oriented as to person, place, time, and situation and could perform various cognitive exercises related to concentration, attention, and memory. For example, Cole successfully performed simple mathematical calculations, described activities from the previous day without difficulty, and recalled his son's birthday and the capital of Alabama, among other facts—demonstrating intact recent and remote memory. In the realm of abstractions, he successfully identified similarities and the lessons of proverbs. And Dr. Storjohann found that Cole's thoughts and speech were logical, coherent, and goal-directed and without loose associations or confusion.

Despite these findings, Dr. Storjohann concluded that Cole had "significant mental health difficulties" and that Cole was "markedly impaired" in his ability to maintain effective social interactions in various settings and "moderately to markedly impaired" in his "ability to understand, carry out, and remember simple work-related instructions." Under these facts, the ALJ did not err in finding Dr. Storjohann's opinion unpersuasive and inconsistent with Dr. Storjohann's own benign findings and the other medical evidence in the record—such as the evidence from Dr. Bartel and Dr. Cooper, who observed Cole's normal mood and affect and found that he was able to "understand and remember

simple instructions and work procedures" and "carry out simple tasks."

Second, the ALJ did not err in finding that Dr. Temple's opinion that Cole was "unemployable" was an administrative finding reserved to the Commissioner—not a medical opinion. The ALJ was correct. The Social Security regulations provide that any statement about whether a claimant is disabled or able to work is a statement on an issue reserved to the Commissioner and is "inherently neither valuable nor persuasive" evidence. 20 C.F.R. § 416.920b(c)(3)(i). Moreover, where Dr. Temple did not provide any explanation for his opinion, the ALJ did not err in finding that Dr. Temple's opinion "was not supported with specific examination findings, did not include any specific vocational limitations, and [was] conclusory."

## IV.    Conclusion

Because substantial evidence supports the ALJ's conclusion that Dr. Storjohann's and Dr. Temple's opinions were unpersuasive, the ALJ did not err. Accordingly, we affirm the denial of Cole's claim.

**AFFIRMED.**