[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-13388

Non-Argument Calendar

_____

ROBIN RICHARDSON DERRICK,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-00496-AKK

_____

Before WILSON, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Robin Richardson Derrick appeals the district court's order affirming the Commissioner of Social Security's (Commissioner) denial of her application for Disability Insurance Benefits (DIB). Derrick argues that (1) the Administrative Law Judge (ALJ) failed to give proper weight to the opinions of her treating physician and two consultative physicians and (2) the ALJ did not conduct a proper analysis of one of her impairments, fibromyalgia. Because we find that the ALJ's decision is supported by substantial evidence, we affirm.

I.

Derrick filed her application for DIB in December 2016, which the Commissioner denied in March 2017. Thereafter, Derrick filed a request for a hearing before an ALJ, which was held via video conference in February 2019. The relevant medical evidence is as follows.

In December 2013, Dr. McLain diagnosed Derrick with fibromyalgia and noted she had a family history of chronic arthritis. In July 2016, Dr. McLain noted that Derrick's fibromyalgia was "moderate" and "stable," and was associated with various symptoms, such as fatigue, reduction in daily activities, and widespread pain. Derrick's physical exam revealed 22 tender joints but no swelling, effusion, or limitations on her range of motion. At several follow-up appointments from December 2016 to May 2018, Dr.

McLain noted that Derrick's fibromyalgia was "moderate" and "stable." At a September 2018 follow-up, Dr. McLain reported that her fibromyalgia was "moderate-severe." Dr. McLain did not place any limitations on Derrick's range of motion, but he did note that she had soft tissue discomfort noted throughout the body.

In December 2017, Dr. McLain completed a "Physical Capacities Evaluation," where he opined the following. Derrick could lift ten pounds occasionally and five pounds frequently. During an eight-hour workday, she could sit for four hours and stand or walk for two hours. Derrick needed to take several breaks throughout the workday. She did not need an assistive device to ambulate, but she should avoid extremes of temperature and environmental pollutants. She could rarely push and pull with her arms and legs, climb and balance, grasp, twist and handle, and work around hazardous machinery. She could occasionally bend and stoop, reach, and operate a car, and she could frequently use her finger dexterity. She would miss more than four days per month of work. Dr. McLain indicated that the medical basis for her restrictions was "fibromyalgia." During the same period, Dr. McLain also completed a "Clinical Assessment of Pain," where he opined that her pain was virtually incapacitating, physical activity increased her pain such that bedrest or medication was necessary, and side effects of prescribed medication would provide some limitations but not serious problems. For ease of reference, we will refer to the Physical Capacities Evaluation and the Clinical Assessment of Pain by Dr. McLain as the "December 2017 opinions."

In March 2017, Dr. Oguntuyo performed a consultative, disability examination on Derrick. Dr. Oguntuyo reported the following. Derrick experienced joint pain in her wrists, hands, shoulders, and lower back because of her worsening arthritis. She was oriented, had normal hearing, had a good gait, and had a five-of-five strength in her hand grip. Derrick could heel walk, toe walk, and perform the squat and rise tests; button and tie shoelaces; pick up small objects and hold a glass; and turn a doorknob. She had a decreased range of motion at the cervical spine and normal range of motion otherwise. Dr. Oguntuyo opined that Derrick "may not be able to perform any meaningful work" that involved prolonged standing, walking, lifting, carrying, or handling objects because of her worsening arthritis, fibromyalgia, and Ménière's disease.

Turning to the medical evidence on Derrick's mental impairments, in December 2016, Nurse Practitioner (NP) Kara Carter diagnosed Derrick with generalized anxiety disorder and major depressive disorder. Derrick continued to visit NP Carter regularly for follow-up appointments from January 2017 to July 2018. NP Carter reported Derrick's symptoms as "stable" at some appointments and "not stable" at others. NP Carter also noted that Derrick's anxiety and depression had "worsened" at some appointments and "improved" at others. NP Carter prescribed medications for Derrick's mental disorders, but Derrick reported to NP Carter that she was not compliant in taking them at some of her follow-up appointments.

In March 2017, Dr. Kennon performed a psychological examination on Derrick and reported the following. Derrick had a normal gait, adequate grooming and hygiene, and an "okay" demeanor. She had no gross or fine motor problems, and Derrick reported sleeping "okay" at night and 11 to 12 hours per day and feeling fatigued, worried, and anxious. Her intellectual functioning was above average, her abstract thinking was somewhat concrete, and her thought process was adequate, though Dr. Kennon noted Derrick's reports of "brain fog" from her fibromyalgia. Dr. Kennon opined that Derrick could understand, carry out, and remember instructions; sustain concentration and persist in work-related activity at a reasonable pace; maintain effective social interaction; yet she could not deal with normal pressures in a work setting because of her depression and fatigue. For ease of reference, we will refer to the opinions of Dr. Kennon and Dr. Oguntuyo as the "consultative opinions."

Based on the medical evidence, the ALJ concluded that Derrick was not disabled and thus not entitled to DIB. To determine whether a claimant is disabled, the ALJ applies a five-step sequential analysis. 20 C.F.R. § 404.1520(a)(4). This process includes an analysis of whether the claimant: (1) is currently engaged in substantial gainful activity; (2) has a severe medically determinable physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform her past relevant work, in light of her residual functional capacity (RFC); and (5) can make an adjustment

to other work, in light of her RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(i)–(v); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). If an ALJ finds a claimant disabled or not disabled at any given step, the ALJ does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4).

At step one, the ALJ determined that Derrick had not engaged in substantial gainful activity since her alleged disability onset date of December 2, 2016. At step two, the ALJ found that Derrick had the following severe impairments: Ménière's disease, rheumatoid arthritis, fibromyalgia, major depressive disorder, and generalized anxiety disorder. At step three, the ALJ determined that Derrick did not have an impairment that met the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Relevant here, the ALJ stated that "[p]ursuant to SSR 12-2p, I must assess whether the claimant's fibromyalgia medically equals . . . a listing."

At step four, the ALJ concluded that Derrick had the RFC to perform the full range of work at all exertional levels, but with several nonexertional limitations. The ALJ noted that in "making this finding, I have considered the entire medical record even when not explicitly discussed." Regarding the December 2017 opinions from Dr. McLain, the ALJ discussed Dr. McLain's findings, but chose to give "little weight" to them. The ALJ reasoned that the December 2017 opinions were inconsistent with Dr. McLain's other treatment notes, which consistently listed Derrick's fibromyalgia symptoms

as "moderate and stable, and list[ed] the claimant's other conditions as stable, and most of them as mild."

Regarding the consultative opinion of Dr. Oguntuyo, the ALJ gave little weight to Dr. Oguntuyo's opinion that Derrick could not perform any meaningful work. The ALJ reasoned that Dr. Oguntuyo's opinion was inconsistent with treatment notes and Dr. Oguntuyo's own examination notes, which did not report any significant limitations. Regarding Dr. Kennon's opinions, the ALJ gave great weight in part and little weight in part to her opinion. Specifically, the ALJ noted that Dr. Kennon's statements about the effect of Derrick's depression were inconsistent with NP Carter's treating notes, which did not indicate significant periods of debilitating depression.

Based on the ALJ's RFC finding and Derrick's nonexertional limitations, the ALJ concluded that Derrick could not return to her past work. However, based on testimony from a vocational expert, the ALJ concluded at step five that there existed jobs in significant numbers in the national economy that Derrick could perform. Accordingly, the ALJ concluded that Derrick was not disabled.

Derrick appealed the ALJ's decision to the district court, who found that substantial evidence supported the ALJ's decision. This appeal followed.

## II.

We review de novo the legal principles on which the ALJ's decision is based. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir.

2005) (per curiam).  We review the ALJ's factual findings and the ultimate determination of disability for substantial evidence.  *Id.* Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Id.*  We review for substantial evidence the ALJ's decision to afford the opinions of a claimant's treating physician little weight.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004).

In evaluating a claimant's disability, the ALJ must give "substantial or considerable weight" to a claimant's treating physician. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  However, the ALJ need not give substantial or considerable weight when "good cause" exists to discount the treating physician's opinion. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).  If the ALJ chooses not to give the opinion any weight, he should explain his reasoning for doing so.  *Id.*  "'[G]ood cause' exists when the (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips*, 357 F.3d at 1241.

In *Phillips*, we concluded the ALJ's decision was supported by substantial evidence when the ALJ discredited a treating physician's opinion where it conflicted with the physician's own treatment notes.  *Id.*  The opinion at issue was "very restrictive," which was inconsistent with previous treatment notes that described the claimant's symptoms as less severe.  *Id.*  Similarly, here, the December 2017 opinions are inconsistent with Dr. McLain's own

21-13388                Opinion of the Court                9

treatment notes of Derrick. While the December 2017 opinions listed severe limitations on Derrick's activity because of her fibromyalgia, his treatment notes indicated that her symptoms were usually moderate and stable, and he only prescribed conservative treatment. Accordingly, the ALJ had good cause to discount the December 2017 opinions.

Derrick's reliance on our decision in *Simon v. Commissioner, Social Security Administration*, 7 F.4th 1094 (11th Cir. 2021) is misplaced. There, we concluded that the ALJ failed to state good cause in discounting the opinions of the claimant's treating psychiatrist. *Id.* at 1105. Although the ALJ decided to give little weight to those opinions, the psychiatrist "regularly wrote that [the claimant] was displaying severe symptoms of mental illness." *Id.* "Good cause" did not exist because "[t]he ALJ pointed to no genuine inconsistencies" between the psychiatrist's opinions and the other medical evidence. *Id.* at 1108. In contrast, here, Dr. McLain's treatment notes, which typically described Derrick's fibromyalgia as moderate and stable, are inconsistent with the severe limitations placed on Derrick's activity in the December 2017 opinions as a result of that disease. Therefore, this case is distinguishable from *Simon*.

Turning to the consultative opinions of Dr. Oguntuyo and Dr. Kennon, Derrick contends that the ALJ likewise failed to give their opinions proper weight. We have previously held that a consultative doctor's opinion, who only examined the claimant on one occasion, is not entitled to great weight. *See Crawford v. Comm'r*

*of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam).  The social security regulations also provide that the Commissioner gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2).  Thus, Dr. Oguntuyo's and Dr. Kennon's opinions are not entitled to the same deference as Derrick's treating physicians.

Derrick relies on the Seventh Circuit's decision in *Wilder v. Chater*, 64 F.3d 335 (7th Cir. 1995) and argues that we should adopt the court's reasoning there.  In *Wilder*, the Seventh Circuit considered "with a degree of suspicion" the ALJ's decision to discount the opinion of a psychiatrist appointed by the ALJ.  64 F.3d at 337.  Derrick suggests that we should likewise be suspicious of the ALJ's decision here to discount the opinions of Dr. Oguntuyo and Dr. Kennon.  This argument fails for two reasons.  First, our caselaw shows that consultative opinions by doctors who only examined the claimant on one occasion are not entitled to great weight.  *See Crawford*, 363 F.3d at 1160.  Second, in *Wilder*, the appointed psychiatrist's opinion was "the only medical evidence in the case." 64 F.3d at 337.  In contrast, here, the record was replete with medical evidence on Derrick's physical impairments from Dr. McLain and her mental impairments from NP Carter.  Furthermore, the ALJ clearly articulated its reasoning for not giving controlling weight to the consultative opinions.  The ALJ gave these opinions little weight because they were inconsistent with the records from Derrick's treating doctors, who are given greater weight.  20 C.F.R. § 404.1527(c)(2).

Because the ALJ had good cause for discounting the December 2017 opinions and the consultative opinions, we find that the ALJ's conclusions in this regard are supported by substantial evidence.

## III.

Derrick also argues that the ALJ failed to conduct a proper analysis of her fibromyalgia under Social Security Ruling (SSR) 12-2p.  According to Derrick, the ALJ improperly concluded that her fibromyalgia was not severe based on a lack of objective evidence. In support, Derrick relies on our unpublished decision in *Somogy v. Commissioner of Social Security*, 366 F. App'x 56, 63 (11th Cir. 2010) (per curiam).  In *Somogy*, we "recognized that fibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on an individual's described symptoms,' and the that the 'hallmark' of fibromyalgia is therefore 'a lack of objective evidence.'"  366 F. App'x at 63 (citing *Moore*, 405 F.3d at 1211).  We concluded that the ALJ erred in discounting the opinions of the claimant's treating physician on the basis that the physician's opinions were derived from the claimant's "subjective complaints" rather than "objective clinical findings."  *Somogy*, 366 F. App'x at 64.

Derrick does not point to any discrete error in the ALJ's decision, but regardless, it is evident that the ALJ properly analyzed Derrick's fibromyalgia.  Instead of concluding that Derrick's fibromyalgia was not severe due to a lack of objective evidence, as in *Somogy*, the ALJ made this finding based on the objective medical evidence that typically described her fibromyalgia as moderate

and stable.  The outcome might be different if the ALJ made this finding based solely on a lack of objective evidence, as we have noted that this is the hallmark of the condition. *Moore*, 405 F.3d at 1211.  However, here, the ALJ based his decision on the reports submitted by Derrick's treating physicians.

The ALJ also followed the procedures set out in SSR 12-2p. That ruling provides that objective medical evidence is needed to establish that a claimant's fibromyalgia is a medically determinable impairment (MDI).  SSAR 12-2p, 77 Fed. Reg. 43640, 43642 (July 25, 2012).  Once an MDI is established, the Commissioner should "evaluate the intensity and persistence of the [claimant's] pain or any other symptoms and determine the extent to which the symptoms limit the [claimant's] capacity for work." *Id.* at 43643.  Here, the ALJ determined that Derrick had an MDI of fibromyalgia.   The ALJ then concluded that "the claimant's statements concerning the intensity, persistence and limiting effects of [the claimant's] symptoms are not entirely consistent with the medical evidence and other evidence in the record."  The ALJ cited to SSR 12-2p in his decision, further indicating that he properly evaluated Derrick's fibromyalgia.  In sum, there is substantial evidence to support the ALJ's decision that Derrick was not disabled due to her fibromyalgia.

**AFFIRMED.**